UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| **ELIZABETH HARRELL,**<br>individually and on behalf of all others<br>similarly situated,<br><br>        *Plaintiff,*<br><br>*v.*<br><br>**AQUION, INC.,** d/b/a **Rainsoft** a<br>Delaware registered corporation,<br>**HOME DEPOT U.S.A., INC.,** a<br>Delaware registered corporation, **A & B**<br>**MARKETING, INC.,** a Florida<br>registered corporation,<br><br>        *Defendants.* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

### CLASS ACTION COMPLAINT

Plaintiff Elizabeth Harrell ("Plaintiff Harrell" or "Harrell") brings this Class Action Complaint and Demand for Jury Trial against Defendants Aquion, Inc., d/b/a RainSoft ("Defendant RainSoft" or "RainSoft"), Home Depot U.S.A., Inc. ("Defendant Home Depot" or "Home Depot"), and Defendant A & B Marketing Inc. ("Defendant A & B Marketing" or "A & B Marketing") to stop the Defendants from violating the Telephone Consumer Protection Act ("TCPA") by making telemarketing calls without consent to consumers whose phone numbers are registered on the National Do Not Call registry ("DNC") and to consumers who have expressly requested that the calls stop. Plaintiff also seeks injunctive and monetary

1

relief for all persons injured by Defendants' conduct. Plaintiff Harrell, for this Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## PARTIES

1.      Plaintiff Harrell is a resident of Jacksonville, Florida.

2.      Defendant RainSoft is a corporation registered in Delaware, with its headquarters located in Roselle, Illinois. Defendant RainSoft conducts business throughout this District, and the U.S.

3.      Defendant Home Depot is a corporation registered in Delaware, with its headquarters located in Atlanta, Georgia. Defendant Home Depot conducts business throughout this District, Florida, and the U.S.

4.      Defendant A & B Marketing is a corporation registered in Delaware, with its headquarters located in Jacksonville, Florida. Defendant A & B Marketing conducts business throughout this District.

## JURISDICTION AND VENUE

5.      This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

6. This Court has personal jurisdiction since the calls that were placed were made into this District and all of the Defendants conduct business in this District.

7. Venue is proper in this District under 28 U.S.C. § 1391(b) since Defendant A & B Marketing resides in this District and a substantial part of the events that occurred that gave rise to this case occurred in this District.

**INTRODUCTION**

8. As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

9. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

10. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

11. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

12. According to online robocall tracking service "YouMail," 5.1 billion robocalls were placed in May 2023 alone, at a rate of 164.0 million per day. www.robocallindex.com (last visited June 18, 2023).

13. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

14. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

15. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

## COMMON ALLEGATIONS

## THE DEFENDANTS

16.    Aquion Inc., operates using the d/b/a RainSoft.

17.    RainSoft sells residential water treatment systems to consumers through a dealer network that operates throughout the U.S.[3]

18.    RainSoft's dealer network sells, installs and provides servicing for Rainsoft's exclusive water treatment systems.[4]

19.    RainSoft's dealer network engages in telemarketing to generate business through its in-home water tests.

20.    A & B Marketing is the exclusive RainSoft distributor in Northeast Florida and Southeast Georgia.[5]

21.    Home Depot is the world's largest home improvement specialty retailer, operating over 2,200 real stores throughout the U.S.[6]

## UNDERSTANDING THE RELATIONSHIP BETWEEN THE DEFENDANTS

22.    Home Depot Home Services is a program through which Home Depot partners with companies like RainSoft to sell products or provide services inside Home Depot retail stores.[7]

---

[3] https://www.aquion.com/rainsoft/
[4] https://www.rainsoftdealer.com/
[5] https://www.rainsoftnefl.com/about-us/
[6] https://www.linkedin.com/company/the-home-depot/
[7] https://www.homedepot.com/services/c/partnership-overview/1dcd27833

23.     RainSoft is an approved Home Depot Home Services vendor, giving its dealer network access to become authorized service providers working in Home Depot stores in their individual sales territories.[8]

24.     A & B Marketing is an approved RainSoft dealer that operates in Home Depot retail stores with end-aisle displays, offering in-home water tests to consumers using water quality surveys.

25.     RainSoft provides training, promotional materials, displays and more to its dealer network for the sake of selling in Home Depot stores:

territory. If you qualify, you can market in your stores with promotions and end-aisle displays; offer customers free in-home water tests; and generate customer interest through in-store water surveys and Home Depot's Appliance Longevity program. Customers can even finance their purchases through Home Depot financing, or use their Home Depot charge account.

**A wide array of promotional materials.**

As a RainSoft dealer you'll have access to promotional materials, e-mails, media advertising, home show displays, promotional flyers and door hangers. There are also contests and sweepstakes for generating leads.



*The water test kit display is an exceptionally effective marketing tool used by practically every RainSoft dealer with access to The Home Depot.*

*\* Dealers must first qualify to participate in the program.*  9

26.     RainSoft provides an exclusive iPad application program to its dealers to be used in stores and presentations:

[8] https://www.linkedin.com/company/rainsoft-water-treatment-systems/
[9] https://www.rainsoftdealer.com/wp-content/uploads/2018/04/RainSoft_Brochure-2016.pdf - Page 4



The *exclusive iPad app customizes presentations* for every homeowner with specific facts and cost savings.

**PURELY BETTER WAYS TO DEMONSTRATE**
## WATER QUALITY IMPROVEMENT.

Combine RainSoft's iPad app with our water test, and in-home presentations get the kind of delivery that homeowners find extremely engaging. Presentations get personalized. Swipe screens make transitions flawless. And when combined

We'll teach you and your people how to use these tools. More importantly, we'll teach you how to listen better, to pick up on cues that will help you anticipate customer concerns and needs.

**Financing for customers who need it.** 10

27. Based on videos presented by RainSoft and based on Plaintiff's experience, RainSoft-branded employees (including A & B Marketing employees) conduct surveys in Home Depot stores using the RainSoft application program:



**JOINING THE RAINSOFT DEALER FAMILY** 11

---

[10] *Id.* – Page 6
[11] https://www.youtube.com/watch?v=F7Aw7jBGCG0 – 56 seconds



**HOME DEPOT'S KNOWLEDGE AND RATIFICATION OF
RAINSOFT'S BUSINESS PRACTICES**

28.     Home Depot approved RainSoft and specifically A & B Marketing as

part of its Home Services program.

29.     Home Depot advertises RainSoft's products through its website:

---



30.    A class action lawsuit was brought against Home Depot, Aquion and World Class Water, a RainSoft dealer alleging deceptive business practices and other legal violations.[14]

31.    Home Depot is aware that RainSoft and its dealer network solicit consumers to fill out surveys that will ultimately lead to an in-home water evaluation

---

[13] https://www.homedepot.com/b/RAINSOFT/N-5yc1vZv1e
[14] La Stella v. Aquion, Inc. et al - Case 3:17-cv-00090-TKW-HTC

where RainSoft or its dealer network will attempt to sell a RainSoft water system to the consumer.

32.    Home Depot benefits financially from each sale, and in addition, provides financing options and credit card are offered as a form of payment to the consumer:

> **The credibility of The Home Depot.**
>
> It's like being at a home show every day of the year. Through an exclusive RainSoft arrangement, qualified dealers can become Authorized Service Providers for The Home Depot stores in their sales territory. If you qualify, you can market in your stores with promotions and end-aisle displays; offer customers free in-home water tests; and generate customer interest through in-store water surveys and Home Depot's Appliance Longevity program. Customers can even finance their purchases through Home Depot financing, or use their Home Depot charge account. [15]

33.    Home Depot's financing options and credit card are a source of income for Home Depot.

34.    A & B Marketing's employees sell RainSoft water treatment systems from inside Home Depot stores. A&B Marketing's employees also give consumers the opportunity to pay for their water treatment systems using Home Depot financing or a Home Depot charge account.

---

[15] https://www.rainsoftdealer.com/wp-content/uploads/2018/04/RainSoft_Brochure-2016.pdf - Page 4

35.     A & B Marketing places unsolicited telemarketing calls to consumers in order to set-up appointments for water tests so they can solicit the purchase of a RainSoft water treatment system. These calls are being placed, at least in part, on behalf of Home Depot and, as per Plaintiff's experience, using the Home Depot name.

36.     The Federal Communication Commission has instructed that corporations such as Home Depot may not avoid liability by having their telemarketing outsourced:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as if often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC notes, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, at ¶ 37 (201) ("FCC 2013 Ruling") (citations omitted).

## RAINSOFT AND ITS DEALER NETWORK PLACE UNSOLICITED CALLS TO CONSUMERS

37.     After a consumer conducts a survey at a Home Depot store through a RainSoft dealer, the consumer receives telemarketing calls soliciting them to book an appointment for an in-home water test.

38.     The purpose of the test is for RainSoft and its dealer network to sell a water system to the consumer.

39.     RainSoft's application program does not present clear and conspicuous consent language to the consumer when the survey is conducted, as per Plaintiff's experience.

40.     As a result, consumers like Plaintiff are deceived into receiving unsolicited calls to phone numbers that are registered on the DNC.

41.     Many consumers have posted complaints about the water survey they answered at a Home Depot store, showing that the consumers did not know that they would be solicited to purchase a water system through an in-home water test and did not know they would receive solicitation calls.

42.     There are many complaints that were addressed specifically to Defendant A & B Marketing, including:



**James K.**
Glen Saint Mary, FL

📷 5　⭐ 73

⭐️☆☆☆☆　7/16/2016

Got suckered into phone calls from this company, when I answered a survey at Home Depot. They told me on two separate calls I needed to have someone come out and evaluate my new water softener.  It's a month old and works great. (Not one of there's).  From this experience,  and past experience, avoid doing any business with these people!

16

**B**　**Beautiful Nightingale**
　　5 reviews

⠀⠀⋮

⭐️☆☆☆☆　a year ago

I thought I was only getting a water test done, turns out they were trying to sale me a water softener system. The guy seemed nice at first and then started to talk down about my home. I watches very closely and he seemed to be switching the glass jars around. When I told him I didn't want to buy a system he became aggervated and never left my gift card. I wouldn't recommend the company.

17

 **Nicole Lukas (Nlukas)**
　　5 reviews

⠀⠀⋮

⭐️☆☆☆☆　a year ago

Very similar experiences to all of the negative reviews….

Terrible experience! Was conned into doing a survey at Home Depot (big mistake) about water softener. Chris was sent out, enjoyed the demo, however when it was time to leave, Chris became very pushy, and made us feel uncomfortable and tended to talk us down after we declined the rain soft system, multiple times. Then he finally called his boss or manager, and tried to talk us down to him as well. What was supposed to be a quick demonstration ruined other plans that were in play because it ended up being a whole 2 hours, instead of demonstrate, leave gift card and "be on their way"… or at least what I was told when I called the day before to verify appt. Will definitely find another system when we are ready… and I still haven't received my gift card. When I asked him about it, he huffed, and said it will be in your email, as he sped out of the back door. … still nothing. Def don't recommend rainsoft in this part of the region with those kind of salesmen….

18

---

16 https://www.yelp.com/biz/rainsoft-a-and-b-marketing-jacksonville
17 https://www.google.com/search?q=RainSoft+A+%26+B+Marketing
18 Id.



**Chaplain Charley**
Local Guide · 52 reviews · 9 photos

⭐☆☆☆☆ a year ago

If you read the negative reviews, our experience was exactly the same. We thought we were getting a water test and all it was was a sales pitch. The salesman was not knowledgable on the tests he was performing and they were not very scientific. At one point his test didn't work like he wanted and he poured out his beaker and said that they were adding new things to the water that were worse but he can't show that with his tests. My wife is a biochemist and so we are probably not the best people to bait and switch.

Worse, the salesman was aggressive and rude. He insulted our home and my wife's cleaning, then just tried to sell us soap. what was supposed to be 45 minutes was two hours and he didn't even leave a business card or any info saying we had to make the decision on a $10,000 system today or we couldn't get one. And like everyone else, no gift card! [19]

**Chris Holden**
23 reviews

⭐☆☆☆☆ 6 months ago

Walked into Home Depot, and answered a few questions for who I thought was a Home Depot employee. Getting daily calls, explained not interested and now keep blocking the number. A different number keeps calling. Requested nicely for telemarketer to stop calling me, and he yelled were calling because you requested this info and hung up. Really strange way to aquire leads. Remove me from your call list. [20]

43.     In addition to providing the app that is used for conducting surveys in Home Depot stores, RainSoft also provides training to its dealer network specifically regarding telemarketing:



**Making phone rooms more productive and efficient.**

If you prefer generating interest by phone, RainSoft can help with proven-effective scripting and phone techniques. Our methods not only help your people set up appointments, but can also pre-qualify prospects and gather key specifics for customizing in-home presentations. [21]

---

[19] Id.

[20] Id.

[21] https://www.rainsoftdealer.com/wp-content/uploads/2018/04/RainSoft_Brochure-2016.pdf - Page 4

44.     Based on the above, RainSoft is directly responsible for the insufficient method used by RainSoft dealers such as A & B Marketing to procure consent from consumers in order to place telemarketing calls.

45.     In response to these calls, Plaintiff Harrell brings forward this case seeking injunctive relief requiring the Defendants to cease from violating the TCPA, as well as an award of statutory damages to the members of the Classes and costs.

## PLAINTIFF HARRELL'S ALLEGATIONS

46.     Plaintiff Harrell registered her cell phone number on the DNC on June 23, 2016.

47.     Plaintiff Harrell uses her cell phone number for personal use only as one would use a landline telephone number in a home.

48.     The calls and text messages that Plaintiff Harrell received from Defendant A & B Marketing on behalf of RainSoft and Home Depot were all received more than 31 days after Plaintiff registered her cell phone number on the DNC.

49.     On April 28, 2023, Plaintiff Harrell visited her local Home Depot store where she encountered what she believed was a Home Depot employee who asked Plaintiff to fill out a water survey.

50.     This employee was wearing a badge and other identification that made it appear as if they are employed by Home Depot.

51.    The employee told Plaintiff Harrell that she could be eligible to win a Home Depot gift card by answering the water survey. Plaintiff answered the survey.

52.    The employee asked Plaintiff Harrell to provide her phone number at the end of the survey so Plaintiff could be notified if she wins the contest. Plaintiff provided her phone number orally.

53.    Plaintiff Harrell was never told that she would receive phone calls or text messages regarding an in-home water test.

54.    Defendant RainSoft intentionally made the consent text on the form small so that consumers would not be aware of what they were consenting to.

55.    As a result, to the extent consumers provide consent to be called, it is because consumers are tricked into providing consent without knowing what they are consenting to.

56.    The purpose of the in-home water test is for A & B Marketing to sell a RainSoft water system, on behalf of RainSoft and Home Depot, as per this complaint that was posted on A & B Marketing's Google profile:



---

[22] https://www.google.com/search?q=RainSoft+A+%26+B+Marketing

57.     On April 29, 2023 at 8:08 AM, Plaintiff Harrell received an unsolicited text message to her cell phone displaying the name Home Depot Home Services, from phone number 904-664-4769.

58.     As part of its agreement with A&B Marketing and RainSoft, Home Depot agreed that they could identify as Home Depot Home Services during calls and text messages to consumers whose contact information was obtained at a Home Depot store.

59.     In response, Plaintiff immediately replied "STOP" and she received confirmation that she had been unsubscribed:



60. When 904-664-4769 is dialed (the number that texted the plaintiff), a message is provided stating that nobody is available to take the call.

61. When 904-944-8000 is called (the phone number identified in the body of the text message), an employee identifies the company name as Home Depot. Upon further discussion, the employee discloses the name RainSoft.

62. Upon information and belief, and based on what follows, Plaintiff Harrell received an unsolicited text message from Defendant A & B Marketing.

63. Plaintiff Harrell was surprised when she received the unsolicited text message. She did not expect to receive a text message from Home Depot or from RainSoft or A & B Marketing.

64. Plaintiff Harrell's only expectation was that she might receive a notification if she won the contest for a Home Depot gift card, which is why Plaintiff immediately opted-out from the text message she received.

65. Despite her opt-out request, Plaintiff received calls from A & B Marketing displaying the name Home Depot Home Services twice on May 1, 2023 and once on May 2, 2023, each time using phone number 904-701-6958:



66.     The calls that Plaintiff Harrell received on May 1, 2023 and May 2, 2023 were not answered.

67.     When 904-701-6958 is dialed, an automated system indicates the company name A & B Marketing.

68.     On May 4, 2023 at 6:17 PM, Plaintiff Harrell received an unsolicited call from Defendant A & B Marketing to her cell phone number on behalf of RainSoft and Home Depot, from 904-701-6957.

69.     When Plaintiff Harrell answered this call, she was thanked for doing the water survey at Home Depot and was told that the employee wanted to drop off a $25 Home Depot gift card and test the city water for Plaintiff.

70.     Plaintiff Harrell understood that the water test would lead to the solicitation of a water treatment system.

71.     In response, Plaintiff told the employee that she wasn't interested, but as she was speaking the employee hung up the phone.

72.     Plaintiff Harrell was not given the chance to make another stop request.

73.     When 904-701-6957 is dialed, an automated system indicates the company name A & B Marketing.

74.     Plaintiff Harrell has never given Defendants consent to place solicitation calls to her cell phone number.

75.     The unauthorized solicitation telephone calls and text message that Plaintiff received from and on behalf of Defendants have harmed Plaintiff Harrell in the form of annoyance, nuisance, and invasion of privacy, occupied her phone line, and disturbed the use and enjoyment of her phone.

76.     Seeking redress for these injuries, Plaintiff Harrell, on behalf of herself and Classes of similarly situated individuals, brings suit under the TCPA.

## CLASS ALLEGATIONS

77.     Plaintiff Harrell brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Classes:

**Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) A & B Marketing on behalf of RainSoft and Home Depot called more than one time, (2) within any 12-month period, (3) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason A & B Marketing called Plaintiff.

**Internal Do Not Call Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) A & B Marketing on behalf of RainSoft and Home Depot called more than one time on their residential telephone number, (2) within any 12-month period (3) for substantially the same reason A&B Marketing

called Plaintiff, (4) including at least once after A & B Marketing's records reflect that the person requested that they stop calling.

78.     The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, thier subsidiaries, parents, successors, predecessors, and any entity in which either the Defendants or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendants have been fully and finally adjudicated and/or released. Plaintiff Harrell anticipates the need to amend the Class definition following appropriate discovery.

79.     **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable, and Plaintiff is a member of the Classes.

80.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a)     Whether Defendants' conduct violated the TCPA;

(b)     Whether the Defendants placed multiple calls within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the DNC for at least 30 days of the time of each call;

(c)     whether Defendant A & B Marketing engaged in telemarketing without implementing adequate internal policies and procedures for maintaining an internal do not call list;

(d)     whether members of the Classes are entitled to treble damages based on the willfulness of Defendants' conduct.

81.     **Adequate Representation**: Plaintiff Harrell will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff Harrell has no interests antagonistic to those of the Classes, and the Defendants have no defenses unique to Plaintiff. Plaintiff Harrell and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff Harrell nor her counsel have any interest adverse to the Classes.

82.     **Appropriateness**: This class action is also appropriate for certification because the Defendants have acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform

relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendants' business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendants' conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff Harrell. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendants' misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## FIRST CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Harrell and the Do Not Call Registry Class)**

83.    Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

84.    The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered her or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

85.     Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

86.     Defendant A & B Marketing, on behalf of RainSoft and Home Depot, violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Harrell and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

87.     Defendant A & B Marketing, on behalf of RainSoft and Home Depot, violated 47 U.S.C. § 227(c)(5) because Plaintiff Harrell and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of the Defendants in violation of 47 C.F.R. § 64.1200, as described above.

88.     As a result of the Defendants' conduct as alleged herein, Plaintiff Harrell and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

89.     To the extent Defendants' misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**SECOND CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Harrell and the Internal Do Not Call Class)**

90.     Plaintiff repeats and realleges paragraphs 1-82 of this Complaint and incorporates them by reference herein.

91.     Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf

such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

92.     Defendant A & B Marketing placed calls to Plaintiff and members of the Internal Do Not Call Class without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by

implementing procedures that do not meet the minimum requirements to allow Defendant A & B Marketing to initiate telemarketing calls/text messages.

93. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

94. Defendant A & B Marketing has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant A & B Marketing's conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing her attorneys as Class Counsel;

b)  An award of money damages and costs;

c)  An order declaring that Defendants' actions, as set out above, violate the TCPA;

d)  An injunction requiring Defendants to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes; and

e)  Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Harrell requests a jury trial.

**Respectfully Submitted,**

**ELIZABETH HARRELL**, individually
and on behalf of all others similarly situated,

DATED this 17th day of October, 2023.

By: /s/ *Stefan Coleman*
Stefan Coleman
COLEMAN PLLC
66 West Flagler Street
Suite 900
Miami, FL 33130
(877) 333-9427
law@stefancoleman.com

Avi R. Kaufman*
kaufman@kaufmanpa.com
KAUFMAN P.A.

237 S Dixie Hwy, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative
Classes*

*\*Lead Counsel for Plaintiff and the putative
Classes*